# In the United States Court of Federal Claims

No. 26-325
(Filed: November 19, 2026 )
(NOT FOR PUBLICATION)

| | |
|---|---|
| **WALTER CHUNN, III**, | * |
| Plaintiff, | * |
| v. | * |
| **THE UNITED STATES**, | * |
| Defendant. | * |

*Walter Chunn, III* , *pro se*, of Antioch, CA

*Elizabeth M. Hosford*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.

**MEMORANDUM OPINION AND ORDER**

**SOMERS**, Judge.

*Pro se* Plaintiff, Walter Chunn, III, filed suit in this Court alleging that he "was the inventor of Rubic's cube" and asserting various contract and patent claims related to his "invention." *See* ECF No. 1 at 1. Plaintiff avers that his contract claim is brought pursuant to the Contract Disputes Act ("CDA") and also cites to the Fifth and Fourteenth Amendments of the Constitution in support of his claims. *Id.* Plaintiff contends that his damages are $100,000,000,000,000,000. ECF No. 1-1. After reviewing the complaint and the government's motion to dismiss, ECF No. 10, the Court dismisses Plaintiff's complaint pursuant to Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction.

**BACKGROUND**

The claims set forth in Plaintiff's complaint appear to arise from an alleged contract between Plaintiff and "General Howell Pretraeus." ECF No. 1 at 1. In his complaint, Plaintiff alleges that he "was the inventor of Rubic's cube and the funder of Military and Government investments to be paid after [the] contract ended." *Id.* He also claims that he "invested with contracts signed and General Howell Petreus [sic] signed also," that his "companies were

frozen," his "patents used with no payment to [him]," and that "General Howell Pretraeus is the person in charge of loss and can give access to funds and property." *Id.* Moreover, Plaintiff states that "Universal group is a company I tired with and in it there are time and money invested overseen by homeland security and General Howell Patreaus. Heinkel corp. also." *Id.* Plaintiff also appears to allege investments in "Walmart . . . Walstreet[,] [sic] GMC motors, Ford, Sony and walkman invention." *Id.*

From what the Court can decipher, Plaintiff seems to allege a claim under the CDA and a claim for patent infringement. *Id.* Plaintiff's patent infringement claim also appears to involve some sort of patent-related takings claim. *See id.* (citing the Fifth Amendment). As compensation, Plaintiff seeks 100 quadrillion dollars. ECF No.1-1 at 1. Shortly after submitting his complaint, Plaintiff filed a motion to proceed in forma pauperis (IFP). ECF No. 2. The government subsequently filed a motion to dismiss Plaintiff's complaint under RCFC 12(b)(1) for failing to satisfy the Court's subject matter jurisdiction and RCFC 12(b)(6) for failing to state a claim upon which relief can be granted.[1] *See* ECF No. 10.

## DISCUSSION

### A. Legal Standard

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States . . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States,* 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within this Court's jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id.* Stated differently, the plaintiff must state a claim that is based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (internal quotation marks omitted) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).

---

[1] Plaintiff also filed a "Response to [the government's] Motion to Dismiss and Request for Hearing and Appointment of Council," ECF No. 12, along with several other documents, including a "list of sub-contractor," "Social Security Statement," "St. John's School For Boys Master Treatment Plan, Service Plan and Objectives, Treatment Plan," "Support to Memorandum, Superior Court of the State of California, County of Alameda Juvenile Court Order, Abstract of Judgment," "Support of Memorandum; 2 Credit Reports," and "Request for Filing Appendix 12 of Memorandum." The Court has reviewed these documents and finds that they are not relevant to this case, nor do they address any of the claims in the complaint or motion to dismiss.

Although a *pro se* plaintiff is held to "less stringent standards than formal pleadings by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements," *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir 1987); *Biddulph v. United States*, 74 Fed. Cl. 765, 767 (2006)). Accordingly, a *pro se* plaintiff still "bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

**B. Analysis**

As noted above, this Court's jurisdiction only extends to claims arising from money-mandating sources of law. 28 U.S.C. § 1491(a)(1). Although Plaintiff's complaint is difficult to comprehend, it is clear to the Court that Plaintiff has not identified a money-mandating source of law to support his claims against the United States. *See generally* ECF No. 1, 12 (identifying the Fifth and Fourteenth Amendments and the CDA). As an initial matter, neither the Fifth Amendment's Due Process Clause nor the Fourteenth Amendment's Due Process and Equal Protection Clauses are money mandating. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (citing *Carruth v. United States*, 627 F.2d 1068, 1081 (Ct. Cl. 1980); *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983)).

Moreover, Plaintiff fails to plausibly allege that he entered a contract with the United States—a prerequisite to the Court's exercise of jurisdiction over a breach of contract claim. A complaint's "fail[ure] to comply with RCFC 9(k) and to allege sufficient facts to show that [the plaintiff] had a contract with the United States" precludes the Court from exercising jurisdiction over Plaintiff's contract claim. *Huntington Promotional & Supply, LLC v. United States*, 114 Fed.Cl. 760, 766 (2014) (citing *Gonzalez–McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010)). Here, the only government-related entity mentioned in the complaint is "General Howell Patraeus."[2] ECF No. 1 at 1. The Court assumes that Plaintiff is referring to retired General David Howell Petraeus, who has been retired since 2012. *See* ECF No. 10 at 5; *see also David Petraeus*, Encyclopedia Britannica (November 3, 2026), https://www.britannica.com/biography/David-Petraeus. Plaintiff's complaint, however, fails to plausibly allege that he entered into a valid contract with General Petraeus and merely states that Plaintiff "invested with contracts signed and General Howell Petreus [sic] signed also." ECF No. 1 at 1. Furthermore, this Court only has jurisdiction over claims against the United States. 28 U.S.C. § 1491(a)(1); *see also Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003) ("[T]he *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual." (citing *United States v. Sherwood*, 312 U.S. 584, 588 (1941)).

[2] Plaintiff's complaint also includes a brief mention of "the homeland security", which the Court takes to mean the United States Department of Homeland Security ("DHS"). ECF No. 1 at 1. However, the complaint's only references to DHS are that (1) money that Plaintiff allegedly invested in "Universal Group" was "overseen by homeland security" and (2) "[t]he homeland security classified this information leaves me without my assets and property." *Id.* It is unclear what "information" Plaintiff is alluding to but regardless, without more, the Court finds that no cognizable claim was pled against DHS.

To the extent that Plaintiff alleges a breach of contract claim against General Petraeus—a private individual—the Court does not have jurisdiction over that claim and, therefore, must dismiss it.

Additionally, even if Plaintiff sufficiently alleged a valid contract with the government, the complaint fails to meet the CDA's separate jurisdictional requirements. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). A contractor may bring a CDA claim in this Court "within 12 months from the date of receipt of a contracting officer's decision . . . ." 41 U.S.C. § 7104(b)(3). In other words, the Court lacks jurisdiction over a CDA claim unless the contractor first submits a valid claim to the contacting officer and receives a final decision on that claim. *M. Maropakis Carpentry, Inc.*, 609 F.3d at 1327. Such a claim must be a written demand seeking, as of right, the payment of money in a sum certain. *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013) (citing *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575–76 (Fed. Cir. 1995)). In addition, for claims seeking more than $100,000, the claim must be certified. 48 C.F.R. § 2.101; 41 U.S.C. § 7103(b)(1). Here, Plaintiff does not allege that he submitted a claim, certified or otherwise, within 12 months prior to filing his complaint. Therefore, the Court lacks jurisdiction over his CDA claim.

Similarly, Plaintiff's patent infringement claim related to the Rubik's Cube falls woefully short. For starters, Plaintiff has not plausibly alleged that he is the inventor of the Rubik's Cube.[3] As a result, he cannot (and did not) plausibly allege that the government engaged in unlicensed use or manufacture of an invention patented by him. *See* 28 U.S.C. § 1498(a) (providing remedy against the United States for unlicensed "use or manufacture of an invention described in and covered by a patent of the United States . . . ."). Moreover, Plaintiff's patent-related takings claim under the Fifth Amendment fares no better. As the government correctly points out, "the Fifth Amendment's Taking Clause is unavailable to patent owners alleging infringement by the government because such actions sound in tort and must be pursued under 28 U.S.C. § 1498(a)." ECF 10 at 7 (citing *Golden v. United States*, 955 F.3d 981, 987–88 (Fed. Cir. 2020)). As a result, the Court finds that Plaintiff has not stated a claim for patent infringement.

---

[3] The Rubik's Cube appears to have been developed in the early 1970s by Erno Rubik and patented in the United States in 1983. *See* U.S. Patent No. 4,378,116 (issued Mar. 29, 1983). The Court may take judicial notice of a publicly available patent. *Hoganas AB v. Dresser Inds.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (citing Fed. R. Evid. 201(b)(2)).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Furthermore, Plaintiff's motion to proceed IFP is **DENIED**. The Clerk **SHALL** enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge